US DISTRICT COURT
WESTERN DIST ARKANSAS
**FILED**
10/31/2023

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA )
)
v. ) CRIMINAL NO.  6:23cr60032-001
)
KRISTI CAROL BARGER )

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1) of the Federal Rules of Criminal Procedure, the parties hereto acknowledge that they have entered into negotiations which have resulted in this Agreement.   The agreement of the parties is as follows:

### WAIVER OF INDICTMENT AND
### PLEA OF GUILTY TO INFORMATION

1.      The defendant, KRISTI CAROL BARGER, agrees to waive Indictment by a grand jury, and consents to the filing of an Information charging the defendant with Bank Fraud, in violation of 18 U.S.C. § 1344.   The defendant further agrees to plead guilty to the Information.

### ADMISSION OF FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

2.      The defendant has fully discussed with defense counsel the facts of this case and the elements of the crimes to which the defendant is pleading guilty. The defendant has committed each of the elements of the crimes to which the defendant is pleading guilty, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

*Introduction*

(1)      The defendant herein, KRISTI CAROL BARGER ("BARGER") was a resident of Garland County, within the Hot Springs Division of the Western District of Arkansas.   BARGER was employed as Senior Trust Officer and Vice President of "Bank-1" from January 2014 until June 18, 2020.

(2)      Bank-1 was an Arkansas financial institution whose deposits were insured by the Federal Deposit Insurance Corporation with branches located in Hot Springs,

Arkansas and headquartered in Pine Bluff, Arkansas.   Bank-1 was located in the Western District of Arkansas and was a financial institution as that term was defined in Title 18, United States Code, Section 20(1), since it was an insured depository institution under the Federal Deposit Insurance Act, Title 12, United States Code, Section 1813(c)(2).

(3)     From the first quarter of 2014 until the second quarter of 2020, BARGER managed trust department of Bank-1, and variously used the titles of Senior Trust Officer, Vice President, Senior Wealth Management Officer, and Investment Manager.   Her duties with Bank-1 included being responsible for all aspects of Bank-1's trust department.

(4)     Barger maintained a checking account at Bank-1, which ended in 3607. Barger also maintained a business checking account at Bank-1 for CYCAC LLC, which ended in 7379.

*First Embezzlement Scheme*

(5)     From January 2014 until June 18, 2020, BARGER knowingly misused her position as an officer of Bank-1 and created a scheme and artifice to defraud, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody or control of Bank-1.

(6)     The manner and means of the scheme were that BARGER would and did embezzle money from trust accounts managed and controlled through accounts at Bank-1 by causing Bank-1 to issue cashier's checks and make Automated Clearing House ("ACH") transfers from trust accounts for payments to her personal and business checking accounts, and credit card accounts.

(7)     BARGER would and did send email requests to the trust department identifying or representing fictitious expenses requests from owners of trust accounts. BARGER also would and did send emails falsely representing payment requests from owners of trust accounts to initiate issuance of checks from the trust accounts by employees of the Bank-1 trust department.

(8)     BARGER would and did receive the cashier's checks or trust account checks either by mail or via remote printing at her branch from the headquarters office of Bank-1.   Barger would and did then write her own account numbers on the cashiers' or trust account checks.

(9)     BARGER would and did then mail or deliver these Bank-1 cashier's checks and trust account checks, containing her handwritten account numbers, to the financial institution or credit card company of her personally owned account and convert the entirety of the checks to her own personal use and benefit.

(10)     Between February 11, 2014, and June 20, 2020, BARGER devised and executed a scheme to defraud Bank-1, being an officer, director, agent, or employee of, or connected in a capacity with Bank-1, a financial institution with its deposits insured by the

Federal Deposit Insurance Corporation, with intent to injure and defraud Bank-1. BARGER willfully misapplied, or embezzled, abstracted, or purloined a sum of money exceeding $1,000 of the moneys, funds, or credits of Bank-1 by means of false and fraudulent pretenses, representations and promises misused her position of trust, as a senior trust officer and vice president of Bank-1 to unlawfully misapply or embezzle funds from Bank-1 trust account holders.

(11)    In furtherance of her scheme, BARGER embezzled the funds by way of the transactions set forth in the table below, identified by trust, check or transaction number, payee and account number, date cleared, and amount.

|  | From the trust of | Check/ trans. # | Barger acct. or payee (acct. # ending in) | Date cleared | Amount |
|---|---|---|---|---|---|
| 1 | C.F.T. | 58905 | Discover Card (9599) | 02/07/2014 | $6,707.95 |
| 2 | C.F.T. | 58930 | Amex (3002) | 02/11/2014 | $5,091.06 |
| 3 | C.F.T. | 58958 | BillMeLater-PayPal (5254) | 02/13/2014 | $2,000.00 |
| 4 | C.F.T. | 59038 | Discover Card (9599) | 02/21/2014 | $3,213.28 |
| 5 | C.F.T. | 59202 | Discover Card (9599) | 03/05/2014 | $895.53 |
| 6 | C.F.T. | 59210 | Amex (3002) | 03/05/2014 | $2,841.45 |
| 7 | C.F.T. | 59583 | BillMeLater-PayPal (5254) | 04/08/2014 | $1,565.29 |
| 8 | C.F.T. | 59588 | Amex (3002) | 04/08/2014 | $3,008.81 |
| 9 | C.F.T. | 59589 | Discover Card (9599) | 04/08/2014 | $1,585.67 |
| 10 | C.F.T. | 60334 | Amex (3002) | 06/16/2014 | $845.78 |
| 11 | C.F.T. | 60333 | Amex (1001) | 06/16/2014 | $418.86 |
| 12 | C.F.T. | 60620 | Amex (1001) | 07/11/2014 | $619.29 |
| 13 | P.F.T. | 59037 | Chase Card (7450) | 02/21/2014 | $4,386.91 |
| 14 | P.F.T. | 59888 | Amex (5007) | 05/02/2014 | $7,851.83 |
| 15 | P.F.T. | 60394 | Discover Card (9599) | 06/23/2014 | $3,105.72 |
| 16 | P.F.T. | 61609 | Amex (4000) | 10/07/2014 | $10,415.78 |
| 17 | P.F.T. | 61614 | Citibank (G.B.) (1622) | 10/08/2014 | $8,487.94 |
| 18 | P.F.T. | 61669 | Chase Card (6687) | 10/15/2014 | $3,516.42 |
| 19 | P.F.T. | 61671 | Amex (4000) | 10/15/2014 | $1,000.03 |
| 20 | P.F.T. | 61675 | Discover Card (9599) | 10/15/2014 | $3,670.57 |
| 21 | M.K. | 62294 | Amex (5007) | 12/22/2014 | $7,100.65 |
| 22 | M.K. | 59883 | Discover Card (9599) | 05/02/2014 | $4,095.79 |
| 23 | M.K. | 60785 | Chase Card (6687) | 07/29/2014 | $4,315.31 |
| 24 | M.K. | 60915 | Chase Card (6687) | 08/07/2014 | $4,437.12 |
| 25 | M.K. | 61600 | Discover Card (9599) | 10/07/2014 | $2,550.10 |
| 26 | M.K. | 62764 | Amex (5007) | 02/11/2015 | $4,060.80 |
| 27 | S.M. | 62989 | Barger chkg. at Bank-1 (3607) | 03/12/2015 | $2,260.72 |
| 28 | S.M. | 62990 | Chase Card (6687) | 03/12/2015 | $4,329.75 |
| 29 | S.M. | 62994 | Amex (6005) | 03/12/2015 | $2,817.65 |
| 30 | S.M. | 68240 | Discover Card (9599) | 12/13/2016 | $2,793.83 |
| 31 | K.F.T. | 64430 | Chase Card (6687) | 09/11/2015 | $3,093.87 |
| 32 | K.F.T. | 64434 | Discover Card (9599) | 09/11/2015 | $2,165.35 |

|  | From the trust of | Check/ trans. # | Barger acct. or payee (acct. # ending in) | Date cleared | Amount |
|---|---|---|---|---|---|
| 33 | K.F.T. | 65862 | Chase Card (6687) | 02/22/2016 | $2,721.60 |
| 34 | W.J.O. | 66182 | First Security Bank (7409) | 03/30/2015 | $4,680.56 |
| 35 | W.J.O. | 64817 | Amex (6005) | 10/21/2015 | $28,297.43 |
| 36 | W.J.O. | 64829 | CitiBank (1622) | 10/22/2015 | $25,047.89 |
| 37 | W.J.O. | 64869 | Kabbage (6708) | 10/23/2015 | $4,183.34 |
| 38 | W.J.O. | 65082 | Kabbage (6708) | 11/17/2015 | $13,333.32 |
| 39 | W.J.O. | 65085 | Amex (7003) | 11/17/2015 | $17,504.71 |
| 40 | W.J.O. | 65257 | Chase Card (6687) | 12/10/2015 | $4,676.37 |
| 41 | W.J.O. | 65391 | Chase Card (6687) | 12/28/2015 | $4,566.95 |
| 42 | W.J.O. | 65392 | CitiCards (1622) | 12/28/2015 | $1,779.30 |
| 43 | W.J.O. | 65396 | Amex (7003) | 12/28/2015 | $2,929.28 |
| 44 | W.J.O. | 65434 | Chase Card (6687) | 12/31/2015 | $3,982.18 |
| 45 | W.J.O. | 65543 | Relyance (HKGK) (5867) | 01/11/2016 | $4,500.00 |
| 46 | W.J.O. | 65608 | Relyance (HKGK) (5867) | 01/21/2016 | $3,200.00 |
| 47 | W.J.O. | 66177 | Discover Card (9599) | 03/30/2016 | $2,002.69 |
| 48 | W.J.O. | 66178 | Chase (6687) | 03/30/2016 | $1,429.79 |
| 49 | W.J.O. | 66179 | Capital One (6321) | 03/30/2016 | $3,340.98 |
| 50 | W.J.O. | 66460 | Capital One (6321) | 05/06/2016 | $4,276.11 |
| 51 | G.M.C. | 66274 | Retirem't Plan Srvcs (5498) | 04/12/2016 | $19,125.57 |
| 52 | G.M.C. | 66462 | Amazon Visa (unknown) | 05/06/2016 | $1,025.00 |
| 53 | G.M.C. | 66461 | Chase Card (6687) | 05/06/2016 | $2,340.32 |
| 54 | G.M.C. | 66709 | Chase Card (6687) | 06/08/2016 | $4,695.80 |
| 55 | S.S. | 66464 | Discover Card (9599) | 05/06/2016 | $1,438.76 |
| 56 | S.S. | 66926 | Chase Card (6687) | 07/05/2016 | $4,252.89 |
| 57 | S.S. | 66927 | CitiCards (1622) | 07/05/2016 | $2,211.22 |
| 58 | S.S. | 67504 | Chase Card (6687) | 09/22/2016 | $3,618.81 |
| 59 | S.S. | 69511 | CitiCards (G.B.) (3296) | 05/17/2017 | $8,591.90 |
| 60 | H.A. & B.A. | 72075 | Retirem't Plan Srvcs (5498) | 08/16/2017 | $25,000.00 |
| 61 | H.A. & B.A. | 70276 | Discover Card (9599) | 08/16/2017 | $9,000.00 |
| 62 | H.A. & B.A. | 70438 | PayPal Credit (5254) | 09/12/2017 | $3,858.79 |
| 63 | W.D.O. | 67940 | CitiCards (1622) | 11/02/2016 | $1,383.87 |
| 64 | W.D.O. | 67941 | Chase Cards (6687) | 11/02/2016 | $3,664.35 |
| 65 | W.D.O. | 68742 | CitiBank (0302) | 02/08/2017 | $4,587.61 |
| 66 | W.D.O. | 69262 | CitiCards (1622) | 05/31/2017 | $3,535.31 |
| 67 | W.D.O. | 70138 | PayPal Credit (5254) | 07/31/2017 | $5,471.12 |
| 68 | W.D.O. | 70139 | Chase Card (4167) | 07/31/2017 | $266.33 |
| 69 | W.D.O. | 70140 | Chase Card Srvcs (0144) | 07/31/2017 | $2,324.51 |
| 70 | W.D.O. | 70557 | PayPal Credit (5254) | 09/21/2017 | $1,429.97 |
| 71 | W.D.O. | 70558 | Chase Card Srvcs (0144) | 09/21/2017 | $8,176.89 |
| 72 | W.D.O. | 70559 | Discover Card (9599) | 09/21/2017 | $717.93 |
| 73 | W.D.O. | 70604 | Capital One (6321) | 09/27/2017 | $5,882.05 |
| 74 | H.A. | 69276 | CitiCards (3296) | 04/13/2017 | $1,424.42 |
| 75 | H.A. | 69277 | Amex (2001) | 04/13/2017 | $2,070.00 |

|  | From the trust of | Check/ trans. # | Barger acct. or payee (acct. # ending in) | Date cleared | Amount |
|---|---|---|---|---|---|
| 76 | H.A. | 69352 | CitiCards (1622) | 04/25/2017 | $22,528.51 |
| 77 | H.A. | 69458 | Discover Card (9599) | 05/05/2017 | $17,029.83 |
| 78 | H.A. | 70021 | Discover Personal Loans (9351) | 07/14/2017 | $27,000.00 |
| 79 | E.B.1. | 62765 | Amex (5007) | 02/11/2015 | $4,000.00 |
| 80 | E.B.1. | 65864 | Amex (7003) | 02/22/2016 | $3,860.70 |
| 81 | E.B.1. | 66783 | Chase Card Srvcs (6887) | 06/16/2016 | $3,262.35 |
| 82 | E.B.1. | 68518 | Chase Card Srvcs (6887) | 01/11/2017 | $2,495.02 |
| 83 | E.B.1. | 68519 | CitiCards (1622) | 01/11/2017 | $1,810.50 |
| 84 | E.B.1. | 68520 | Bank of America (2130) | 01/11/2017 | $2,566.76 |
| 85 | E.B.1. | 71249 | PayPal Credit (5254) | 12/07/2017 | $8,139.43 |
| 86 | E.B.1. | 72284 | Retirem't Plan Srvcs (5498) | 04/06/2018 | $16,405.54 |
| 87 | E.B.1. | 73846 | Discover Card (9599) | 12/04/2018 | $6,079.07 |
| 88 | E.B.C. | 73847 | PayPal Credit (5254) | 12/04/2018 | $2,083.04 |
| 89 | H.S. & H.B. | 73746 | Chase Card Srvcs (9391) | 11/16/2018 | $6,392.84 |
| 90 | V.G. | 72110 | Chase Card Srvcs (0144) | 03/15/2018 | $13,888.39 |
| 91 | M.P. | 73453 | Chase Card Srvcs (0144) | 10/04/2018 | $4,114.87 |
| 92 | M.P. | 62616 | Wells Fargo (1998) | 04/26/2019 | $13,903.10 |
| 93 | M.P. | 62617 | Amex (4007) | 04/26/2019 | $4,656.55 |
| 94 | M.P. | 62618 | Discover Card (9599) | 04/26/2019 | $1,581.87 |
| 93 | M.P. | 62619 | Chase Card Srvcs (9391) | 04/26/2019 | $1,858.48 |
| 94 | M.P. | 75139 | Chase Card Srvcs (9391) | 06/03/3019 | $5,138.19 |
| 95 | M.P. | 75298 | Chase Card Srvcs (9391) | 06/19/2019 | $6,240.28 |
| 96 | M.P. | 75299 | Chase Card Srvcs (9391) | 06/19/2019 | $1,323.36 |
| 97 | M.P. | 75300 | Amex (4007) | 06/19/2019 | $2,069.11 |
| 98 | M.P. | 75301 | CitiCards (8048) | 06/19/2019 | $2,490.27 |
| 99 | M.P. | 77400 | Chase Card Srvcs (9391) | 04/03/2020 | $4,563.14 |
| 100 | V.R. & L.R | 65298 | Wells Fargo (1998) | 09/20/2019 | $25,846.50 |
| 101 | V.R. & L.R. | 65351 | Chase Card Srvcs (9391) | 09/24/2019 | $6,602.15 |
| 102 | J.D. | 76216 | Wells Fargo (1998) | 10/25/2019 | $16,722.14 |
| 103 | M.B.1. | 75112 | Wells Fargo (5772) | 05/29/2019 | $8,600.00 |
| 104 | M.R. | 75132 | Chase Card Srvcs (7685) | 05/30/2019 | $2,989.95 |
| 105 | M.R. | 75724 | PayPal Credit (5254) | 08/29/2019 | $8,138.98 |
| 106 | M.R. | 75725 | Capital One (6321) | 08/29/2019 | $2,393.07 |
| 107 | M.R. | 75726 | Chase Card Srvcs (4167) | 08/29/2019 | $1,019.51 |
| 108 | M.R. | 75727 | Chase Card Srvcs (9391) | 08/29/2019 | $7,944.55 |
| 109 | M.R. | 75728 | Discover Card (9599) | 08/29/2019 | $5,644.92 |
| 110 | M.R. | 75729 | Amex (4007) | 08/29/2019 | $3,642.80 |
| 111 | M.R. | 77401 | Discover Card (9599) | 04/03/2020 | $3,478.81 |
| 112 | M.B.2. | 75111 | PayPal Credit (5254) | 05/29/2019 | $3,006.00 |
| 113 | M.B.2. | 77402 | Wells Fargo (1998) | 04/03/2020 | $4,392.17 |
| 114 | G.Y. | 77399 | Comenity (9626) | 04/03/2020 | $19,618.51 |
| 115 | E.B.2. | 75770 | Wells Fargo (8702) | 05/20/2019 | $14,360.00 |

|     | From the trust of | Check/ trans. # | Barger acct. or payee (acct. # ending in) | Date cleared | Amount |
|-----|------|-------|------------------|--------|--------|
| 116 | E.B.2. | 75059 | CitiCards (7685) | 03/05/2020 | $3,607.83 |
| 117 | E.B.2. | 68633 | Wells Fargo (1998) | 03/24/2020 | $4,996.57 |
| 118 | E.B.2. | 77403 | CitiCards (7871) | 04/03/2020 | $9,250.68 |
|     |      |       |                  |        | **$707,255.26** |

*Second Embezzlement Scheme*

(12)     Additionally, from November 11, 2019, until June 20, 2019, BARGER misused her position at Bank-1 to unlawfully embezzle funds from a Bank-1 trust account, the "L.A. and E.A. Family Trust Account."   BARGER conducted this embezzlement scheme by directing funds from the trust account that were invested and/or held at TD Ameritrade, account ending 4568.   During this time period, BARGER unlawfully initiated 30 payments from the trust account and subsequently deposited them into her personal checking account ending 3607 or her business account ending 7379 at Bank-1.

(13)     BARGER obtained the "log-in" information from account holder L.A. prior to his death, and continued to utilize this "log-in" for Bank-1 related legitimate business as well as to further her embezzlement scheme at Bank-1.

(14)     BARGER made payments in the amount of $166,394.97 from her Bank-1 checking account ending 3607 to her Chase credit card accounts from November 12, 2019, to June 18, 2020.

(15)     The following table identifies payments directed by BARGER to her own accounts by unlawfully utilizing the online access information for Ameritrade Account, ending 4568, belonging to the deceased account holder, L.A., and L.A.'s spouse, E.A. Beginning in November 2019 and continuing until her termination in June 2020, BARGER embezzled approximately $183,509 from this account.   These transactions are identified in the following table, with two deposits made at Barger's account at "Bank-2":

|     | Issue Date | Deposit Date | Payee | Barger Account | Amount |
|-----|-----------|-------------|-------|---------|--------|
| 119 | 11/12/2019 | 11/18/2019 | Barger | 3607 | $2,600.00 |
| 120 | 11/13/2019 | 11/19/2019 | G.B. | 3607 | $5,760.00 |
| 121 | 11/14/2019 | 11/19/2019 | Barger | 3607 | $4,943.10 |
| 122 | 11/18/2019 | 11/27/2019 | Barger | 3607 | $6,303.10 |
| 123 | 11/25/2019 | 12/03/2019 | Barger | 3607 | $6,500.00 |
| 124 | 11/26/2019 | 12/03/2019 | CYCAC, LLC | 7379 | $5,000.00 |
| 125 | 12/05/2019 | 12/16/2019 | Barger | 3607 | $5,000.00 |
| 126 | 12/05/2019 | 12/16/2019 | CYCAC, LLC | 7379 | $5,000.00 |
| 127 | 12/17/2019 | 12/26/2019 | CYCAC, LLC | 7379 | $6,000.00 |
| 128 | 12/23/2019 | 12/31/2019 | CYCAC, LLC | 7379 | $7,000.00 |
| 129 | 01/09/2020 | 01/15/2020 | CYCAC, LLC | 7379 | $6,000.00 |
| 130 | 01/15/2020 | 01/23/2020 | CYCAC, LLC | 7379 | $7,000.00 |

|     | Issue Date | Deposit Date | Payee | Barger Account | Amount |
|-----|-----------|-------------|-------|--------------|--------|
| 131 | 01/30/2020 | 02/07/2020 | CYCAC, LLC | 7379 | $5,000.00 |
| 132 | 02/03/2020 | #IBRC94RM | CYCAC, LLC | Bank-2 | $8,000.00 |
| 133 | 02/06/2020 | #IB5CG4IV | CYCAC, LLC | Bank-2 | $6,000.00 |
| 134 | 02/11/2020 | 02/19/2020 | CYCAC, LLC | 7379 | $5,000.00 |
| 135 | 02/13/2020 | 02/19/2020 | CYCAC, LLC | 7379 | $8,000.00 |
| 136 | 03/09/2020 | 03/17/2020 | CYCAC, LLC | 7379 | $5,000.00 |
| 137 | 03/20/2020 | 03/31/2020 | CYCAC, LLC | 7379 | $5,000.00 |
| 138 | 04/17/2020 | 04/27/2020 | CYCAC, LLC | 7379 | $9,000.00 |
| 139 | 04/28/2020 | 05/05/2020 | Barger | 3607 | $7,575.00 |
| 140 | 04/28/2020 | 05/05/2020 | G.B. | 3607 | $8,750.00 |
| 141 | 05/18/2020 | 05/27/2020 | Barger | 3607 | $8,000.00 |
| 142 | 05/27/2020 | 06/02/2020 | Barger | 3607 | $8,000.00 |
| 143 | 06/01/2020 | ACH | L.A. | 3607 | $3,007.00 |
| 144 | 06/03/2020 | ACH | L.A. | 3607 | $3,950.00 |
| 145 | 06/05/2020 | ACH | L.A. | 3607 | $4,847.18 |
| 146 | 06/08/2020 | ACH | L.A. | 3607 | $4,847.18 |
| 147 | 06/11/2020 | ACH | L.A. | 3607 | $4,405.78 |
| 148 | 06/15/2020 | ACH | L.A. | 3607 | $4,684.30 |
| 149 | 06/18/2020 | ACH | L.A. | 3607 | $7,336.30 |
|     |           |             |       |              | **$183,509.00** |

*Defendant's Guilty Plea*

(16)    In pleading guilty to the Information, BARGER admits that from January 2014 until June 18, 2020, she devised and executed a scheme and artifice to defraud, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody or control of Bank-1, whose deposits were insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 1344, as set forth above.    Further, BARGER admits that on September 20, 2019, in the Hot Springs Division of the Western District of Arkansas, for the purpose of executing the above-described scheme to defraud and to obtain by means of false and fraudulent pretenses, representations and promises, moneys, funds and property owned by and under the custody and control of a financial institution, she sent an email to the Bank-1 trust department, stating:    "I also need a cashiers check printed to [BARGER's Bank-1 branch office] from [V.R. & L.R.] Trust for $25,846.50 payable to Wells Fargo. This is to pay off his open line of credit ending in 1998."

*Loss Amount and Restitution*

(17)    As set forth above, BARGER embezzled a total of **$890,764.26** from and by way of the accounts she managed at Bank-1.   The parties agree this is the loss amount for both calculation of the defendant's advisory range for imprisonment under the U.S. Sentencing Guidelines, and for restitution.

(18)   Bank-1's insurer was Traveler's Casualty and Surety Company of America ("Traveler's").   Traveler's paid a total of $961,876.74 to Bank-1 as reimbursement for the theft losses, based on the amounts Bank-1 paid out to the individual victims.   (The amounts differ because some of the payments made by Bank-1 were for interest that would have accrued on the accounts, and estimated appreciated gains, which are not cognizable as losses under federal restitution statutes.)   Consequently, Traveler's stands in place of Bank-1, and the defendant agrees to pay restitution to Traveler's as ordered by the Court.

## ADVICE OF RIGHTS

3.     The defendant hereby acknowledges that she has been advised of and fully understands the following constitutional and statutory rights:

  a. to have an attorney and if the defendant cannot afford an attorney, to have one provided to her and paid for at the United States' expense;
  b. to persist in her plea of not guilty;
  c. to have a speedy and public trial by jury;
  d. to be presumed innocent until proven guilty beyond a reasonable doubt;
  e. to confront and examine witnesses who testify against her;
  f. to call witnesses on her behalf;
  g. to choose to testify or not testify and that no one could force the defendant to testify; and,
  h. to have at least 30 days to prepare for trial.

## WAIVER OF RIGHTS

4.     The defendant hereby acknowledges that she understands with respect to each count to which she pleads guilty, she thereby WAIVES all of the rights listed as (b) through (h) of the above paragraph.

## WAIVER OF ACCESS TO RECORDS

5.     The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

## WAIVER OF "HYDE" CLAIM

6.      The defendant hereby waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney fees and other litigation expenses arising out of the investigation or prosecution of this matter.

## EFFECTS OF BREACH OF THIS AGREEMENT BY DEFENDANT

7.      The defendant agrees that if after signing this Plea Agreement the defendant commits any crimes, violates any conditions of release, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, intentionally incomplete, or intentionally untruthful, or if the defendant violates any term of this Plea Agreement, takes a position at sentencing which is contrary to the terms of this Plea Agreement or attempts to withdraw from this Plea Agreement, this shall constitute a breach of this Plea Agreement which shall release the United States from any and all restrictions or obligations placed upon it under the terms of this agreement and the United States shall be free to reinstate dismissed charges or pursue additional charges against the defendant. The defendant shall, however, remain bound by the terms of the agreement, and will not be allowed to withdraw this plea of guilty unless permitted to do so by the Court.

8.      The defendant further agrees that a breach of any provisions of this Plea Agreement shall operate as a WAIVER of defendant's rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence and the United States shall be allowed to use and to introduce into evidence any one or more of the following:

> a.      admissions against interest, both oral and written, made by the defendant to any person;
> b.      statements made by the defendant during her change of plea hearing;
> c.      the factual basis set forth in the Plea Agreement;
> d.      any testimony given under oath in these proceedings or to a grand jury or a petit jury;

e.      any and all physical evidence of any kind which the defendant has provided to the United States; and,

f.      any and all information provided by the defendant to the United States' attorneys, or to federal, state, county, and/or local law enforcement officers.

## WAIVER OF APPELLATE AND POST-CONVICTION RIGHTS

9.      In exchange for the United States' concessions in this Plea Agreement, the defendant waives, to the full extent of the law, any right to appeal or to collaterally attack the conviction and sentence, including any restitution order, as follows:

a.      the defendant waives the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a);

b.      the defendant reserves the right to appeal from a sentence which exceeds the statutory maximum;

c.      the defendant expressly acknowledges and agrees that the United States reserves all rights to appeal the defendant's sentence as set forth in 18 U.S.C. § 3742(b), and *U.S. v. Booker*, 125 S. Ct. 738 (2005);

d.      the defendant waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel or prosecutorial misconduct;

e.      the defendant waives the right to have the sentence modified pursuant to 18 U.S.C. § 3582(c), except for a rule 35(b) motion filed by the United States;

f.      the defendant waives the right to appeal the District Court's determination of the amount of restitution and the Court's subsequent restitution order, if any; and

g.      the defendant waives the right to appeal the District Court's determination of any forfeiture issues and the Court's subsequent forfeiture order, if any.

## MAXIMUM PENALTIES

10.      The defendant hereby acknowledges that she has been advised of the maximum penalties for each count to which she is pleading guilty.  By entering a plea of guilty to the Information, the defendant agrees that she faces:

a.      a maximum term of imprisonment for thirty (30) years;

b.      a maximum fine of $1,000,000 (or alternatively, if any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss);

c.      both imprisonment and fine;

     d.    a term of supervised release which begins after release from prison;
     e.    a possibility of going back to prison if the defendant violates the conditions of supervised release;
     f.    a special assessment of $100.00 for each count of conviction; and,
     g.    restitution as ordered by the Court.

### CONDITIONS OF SUPERVISED RELEASE

11.    The defendant acknowledges that if a term of supervised release is imposed as part of the sentence, the defendant will be subject to the standard conditions of supervised release as recommended by the United States Sentencing Commission and may be subject to other special conditions of supervised release as determined by the Court.   The standard conditions of supervised release are as follows:

a.   The defendant shall report to the probation office in the federal judicial district where he or she is authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs the defendant to report to a different probation office or within a different time frame.

b.   After initially reporting to the probation office, the defendant will receive instructions from the court or the probation officer about how and when to report to the probation officer, and the defendant shall report to the probation officer as instructed.

c.   The defendant shall not knowingly leave the federal judicial district where he or she is authorized to reside without first getting permission from the court or the probation officer.

d.   The defendant shall answer truthfully the questions asked by the probation officer.

e.   The defendant shall live at a place approved by the probation officer. If the defendant plans to change where he or she lives or anything about his or her living arrangements (such as the people the defendant lives with), the defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

f.   The defendant shall allow the probation officer to visit the defendant at any time at his or her home or elsewhere, and the defendant shall permit the probation officer to take any items prohibited by the conditions of the defendant's supervision that he or she observes in plain view.

g.   The defendant shall work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses the defendant from doing so.  If the defendant does not have full-time employment he or she shall try to find full-time employment, unless the probation officer excuses the defendant from doing so. If the defendant plans to change where the defendant works or anything about

his or her work (such as the position or the job responsibilities), the defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

h.  The defendant shall not communicate or interact with someone the defendant knows is engaged in criminal activity. If the defendant knows someone has been convicted of a felony, the defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer.

i.  If the defendant is arrested or questioned by a law enforcement officer, the defendant shall notify the probation officer within 72 hours.

j.  The defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or Tasers).

k.  The defendant shall not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

l.  If the probation officer determines that the defendant poses a risk to another person (including an organization), the probation officer may require the defendant to notify the person about the risk and the defendant shall comply with that instruction. The probation officer may contact the person and confirm that the defendant has notified the person about the risk.

m.  The defendant shall follow the instructions of the probation officer related to the conditions of supervision.

## RESTITUTION

12.  The defendant agrees to pay full restitution to all victims of the offense(s) to which the defendant is pleading guilty, to all victims of any offense(s) dismissed as a result of this Plea Agreement, and for all losses caused by the defendant's criminal conduct even if such losses resulted from crimes not charged in the Indictment or Information or admitted to by the defendant in the factual statement.   The defendant acknowledges and agrees that all restitution as agreed to above shall be governed by the provisions of the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A.   The defendant understands full restitution will be ordered regardless of defendant's financial resources.   The defendant further understands the restitution will be determined by the Court.   The defendant agrees to cooperate in efforts to collect the restitution obligation, by any

means the United States deems appropriate and agrees to waive any defense or objections to any action to enforce the collection of the restitution.  The defendant understands imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.  The defendant acknowledges that any restitution imposed is not dischargeable in any bankruptcy proceeding pursuant to 18 U.S.C. § 3613(e).

13.     The parties agree that the currently unreimbursed losses caused by the defendant's criminal conduct that the Court should order as restitution are as follows:

- **$890,764.26, which is owed to Traveler's Casualty and Surety Company of America.**

### AGREEMENT TO PROVIDE FINANCIAL INFORMATION

14.     The defendant agrees that no later than thirty (30) days after the change of plea, the defendant shall complete the financial disclosure statement and the accompanying releases provided by the United States Attorney's Office and deliver them to the United States Probation Office and the United States Attorney's Office.   This financial disclosure statement is sworn by the defendant to be true and correct under penalty of perjury. The defendant agrees that her failure to truthfully and fully complete the financial disclosure statement and accompanying releases may result in the government objecting to the defendant receiving a reduction for acceptance of responsibility.

### PAYMENT OF MONETARY PENALTIES

15.     The defendant agrees that monetary penalties to include special assessments, fine, and/or restitution imposed by the Court will be (i) subject to immediate enforcement as provided in 18 U.S.C. § 3613c, and (ii), submitted to the Treasury Offset Program so that any federal payment such as an income tax refund or transfer of returned property the defendant receives may

be offset and applied to federal debt without affecting the periodic payment schedule ordered by the Court.

## CONSENT TO REGULATORY ACTION

16.    The defendant agrees to consent to any regulatory action taken by a Federal financial institution regulatory agency to permanently remove the defendant from office and/or prohibit the defendant from participating, whether as an institution-affiliated party or otherwise, in the conduct of the affairs of any insured depository institution or depository institution holding company, or any other organization or entity provided in Section 8(e) of the Federal Deposit Insurance Act, 12 U.S.C. § 1818(e).

## NO OTHER CHARGES

17.    The United States agrees that no other federal charges, which stem from the activities described in the Information, will be brought against the defendant in the Western District of Arkansas.

## SENTENCING GUIDELINES ARE ADVISORY BUT NOT MANDATORY

18.    The parties acknowledge that the Court shall consult and take into account the United States Sentencing Commission Guidelines in determining the sentence, but that the Court is not bound by the Guidelines and may sentence the defendant to any sentence within the statutory range.

## AGREEMENT DOES NOT PROMISE A SPECIFIC SENTENCE

19.    The defendant acknowledges that discussions have taken place concerning the possible guideline range which might be applicable to this case.   The defendant agrees that any discussions merely attempt to guess at what appears to be the correct guideline range and do not bind the District Court.   Further, the defendant acknowledges that the actual range may be greater

than contemplated by the parties.   In the event that the actual guideline range is greater than the parties expected, the defendant agrees that this does not give her the right to withdraw her plea of guilty.

## RELEVANT CONDUCT CONSIDERED

20.     At the sentencing hearing, the United States will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to the defendant's background, character and conduct, including the conduct that is the subject of this investigation for which she has not been charged up to the date of this Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this agreement, as provided by § 1B1.3 of the Sentencing Guidelines.

## PERJURY

21.     In the event that it is determined that the defendant has not been truthful with the Court as to any statements made while under oath, this Plea Agreement shall not be construed to protect the defendant from prosecution for perjury or false statement.

## CONCESSIONS BY THE UNITED STATES

22.     The United States agrees to recommend that the defendant be sentenced within the Guideline range as determined by the Court.

23.     The United States agrees not to object to a recommendation by the Probation Office or a ruling of the Court which awards the defendant an appropriate-level decrease in the base offense level for acceptance of responsibility.   If the offense level in the Presentence Report is 16 or greater and the Court accepts a recommendation in the Presentence Report that the defendant receive two points for acceptance of responsibility, the United States agrees to move for an additional one-point reduction for acceptance of responsibility for a total of three points. However,

the United States will not be obligated to move for an additional one-point reduction or recommend any adjustment for acceptance of responsibility if the defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following   a) falsely denies, or makes a statement materially inconsistent with, the factual basis set forth in this agreement, b) falsely denies additional relevant conduct in the offense, c) is untruthful with the United States, the Court or probation officer, or d) materially breaches this Plea Agreement in any way.

## UNITED STATES' RESERVATION OF RIGHTS

24.     Although the United States agrees not to object to certain findings by the Probation Office or to rulings of the Court, it reserves the right to:

      a.     make all facts known to the Probation Office and to the Court;
      b.     call witnesses and introduce evidence in support of the Presentence Report;
      c.     contest and appeal any finding of fact or application of the Sentencing Guidelines;
      d.     contest and appeal any departure from the appropriate Guideline range; and,
      e.     defend all rulings of the District Court on appeal including those rulings which may be contrary to recommendations made or positions taken by the United States in this Plea Agreement which are favorable to the defendant.

## NO RIGHT TO WITHDRAW THE GUILTY PLEA

25.     The United States' concessions on sentencing options are non-binding and made pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure.   As a result, if the Court should reject the defendant's requests or recommendations for certain findings of fact or applications of the Guidelines, the defendant acknowledges that there is no right to withdraw the guilty plea.

## AGREEMENT NOT BINDING ON THE COURT

26.     The parties agree that nothing in this Agreement binds the District Court to:

      a.     make any specific finding of fact;
      b.     make any particular application of the Sentencing Guidelines;
      c.     hand down any specific sentence;

      d.      accept any stipulation of the parties as contained in this Plea Agreement; and,

      e.      accept this Plea Agreement.

27.      The United States and the defendant acknowledge that the Court has an obligation to review the Presentence Report before it accepts or rejects this Plea Agreement.

## AGREEMENT DOES NOT BIND ANY OTHER ENTITY

28.      The parties agree that this Plea Agreement does not bind any governmental entity other than the United States Attorney's Office for the Western District of Arkansas.

## SPECIAL ASSESSMENT

29.      The defendant agrees to pay $100 as the special assessment in this case.

## REPRESENTATIONS BY DEFENDANT

30.      By signing this Plea Agreement, the defendant acknowledges that:

      a.      The defendant has read this Agreement (or has had this Agreement read to her) and has carefully reviewed every part of it with defense counsel.

      b.      The defendant fully understands this Plea Agreement and is not under the influence of anything that could impede the defendant's ability to fully understand this Plea Agreement.

      c.      No promises, agreements, understandings, or conditions have been made or entered into in connection with the decision to plead guilty except those set forth in this Plea Agreement.

      d.      The defendant is satisfied with the legal services provided by defense counsel in connection with this Plea Agreement and matters related to it.

      e.      The defendant has entered into this Plea Agreement freely, voluntarily, and without reservation and the defendant's desire to enter a plea of guilty is not the result of threats or coercion directed at the defendant or anyone connected with the defendant.

## REPRESENTATIONS BY DEFENSE COUNSEL

31.      By signing this Plea Agreement, counsel for the defendant acknowledges that:

      a.      Counsel has carefully reviewed every part of this Agreement with the defendant and this Agreement accurately and completely sets forth the entire agreement between the United States and the defendant.

      b.      Counsel has explained the ramifications of the Plea Agreement to the defendant, and believes that the defendant understands this Plea Agreement,

what rights are being lost by pleading guilty, and what the United States has agreed to do in exchange for the plea of guilty.

c.    Counsel believes that the defendant's decision to enter into this Agreement is an informed and voluntary one.

**PLEA AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT**

32.    The defendant and her attorney both acknowledge that this Plea Agreement constitutes the entire agreement of the parties.  Further, all parties agree that there are no oral agreements or promises which have been made to induce the defendant to change her plea to guilty.

Dated this 31st day of October , 2023.

KRISTI CAROL BARGER
Defendant

Benjamin D. Hooten
Attorney for Defendant

DAVID CLAY FOWLKES
UNITED STATES ATTORNEY

By:

Steven M. Mohlhenrich
Assistant United States Attorney

Page **18** of **18**